UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| LISA REFFETT, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13 CV 1240 |
| | ) | |
| DEERE & COMPANY, and | ) | |
| JOHN DEERE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION and ORDER

Plaintiff Lisa Reffett ("Reffett") is a former employee of defendants Deere and Company and John Deere Company (collectively, "Deere" or "defendants"). (DE # 1 ¶ 9.) The matter is now before the court on Deere's motion for summary judgment. (DE # 71.) Additionally, plaintiff has filed a motion for leave to file a sur-reply and to take additional discovery. (DE # 81.) For the following reasons, the court will grant the motion for summary judgment in part, grant the motion for leave, and defer ruling on the remainder of the motion for summary judgment.

## I.    BACKGROUND[1]

Plaintiff is a woman and a resident of the state of Indiana. (DE # 17 at 2.) In November of 2008, she was hired by Deere as a "Grade 11 [M]anager of John Deere

---

[1] In the summary that follows, any unattributed facts are undisputed. This summary provides an overview. Additional relevant facts will be referred to in the analysis that follows.

Merchandise." (DE # 75-10 ¶ 2.) She originally reported to Jeff Gredvig. (*Id.*) In 2011, Tommy Morgan ("Morgan") replaced Jeff Gredvig as plaintiff's manager. (*Id.* ¶ 6.) In 2011, Plaintiff's position with Deere was changed from "Grade 11 Manager" to "Supply Manager IV." (*Id.* ¶ 6–7.)

Plaintiff asserts that over the remainder of her time working at Deere, Morgan made various sexist comments and took actions which negatively impacted her. Among those actions are the following. Plaintiff says that Morgan told her she was not supporting her son's needs by being a working mother and that she should be at home with her son. (DE # 75-10 ¶¶ 8, 16.) She says Morgan excluded her from a business trip to Australia because she is a woman. (*Id.* ¶ 10.) She says Morgan refused to approve a raise for her productive female secretary. (*Id.* ¶ 12.) After that secretary left the position, plaintiff says Morgan did not allow her to hire a replacement secretary. (*Id.* ¶¶ 18, 23.) She says that Morgan told her that her current position required too much travel for a woman (*id.* ¶ 18), but that a transfer into the Construction and Forestry Division was also a waste of time as it was also not a place for a woman (*id.* ¶ 19). Plaintiff says Morgan showed her Bible passages regarding a woman's role in the home. (*Id.* ¶ 25.) Plaintiff also argues that Morgan gave her scores on her performance reviews that were below what she deserved. (*See e.g.*, *id.* ¶ 45.)

Plaintiff talked to human resources officers about some of these concerns, but she says they were not helpful. (*See* DE # 75-10 ¶¶ 17, 37–39, 42.) On October 1, 2012, plaintiff says she told human resources that she wanted another position in the company due to Morgan's conduct. (*Id.* ¶ 42.) Deere says plaintiff told human resources

about her desire for a new position even earlier, on May 23, 2012. (DE # 72-1 at 8.) It is undisputed that Deere began to search for a new opportunity for plaintiff in 2012. (*See* DE ## 73-5 at 3; 75-10 ¶ 13.)

On October 16, 2012, while driving, plaintiff received an email regarding a recent performance evaluation. (DE # 75-20 ¶ 45.) She says this caused her to have a severe ocular migraine headache and to black out, which caused her to hit a barrier in the road with her truck. (*Id*. ¶ 46.) She was placed in the hospital due to vision issues. (*Id*.) She then requested and obtained FMLA leave beginning October 16, 2012, for what she says was "post-traumatic stress caused by the continuing harassment of Morgan." (*Id*. ¶ 47.) Once plaintiff exhausted her FMLA leave, she took personal leave and vacation time. (*Id*. ¶¶ 49, 56, 59.) She never returned to work at Deere prior to leaving the company on February 14, 2014. (*See id*. at 58–63.)

At some point after she began taking FMLA leave, Deere chose to stop looking for other prospective jobs for plaintiff. (DE # 75-6 at 19.) Jeffrey Bell ("Bell"), a member of Deere's human resources department, says this was because Deere did not know when plaintiff would be returning to work. (*Id*.) In January 2013, Deere backfilled plaintiff's old Supply Manager IV position, with a male employee. (DE # 75-10 ¶ 50.) In March 2013, plaintiff says Bell told her that there were no available positions for her at Deere. (*Id*. ¶ 54.) She also says Bell told her something similar (that "there was not a position") in November of 2013. (DE # 75-3 at 80–81.) Plaintiff was not medically cleared to return to work until November 2013. (DE # 75-10 ¶ 58.) However in that

3

same month, she interviewed for a job at another company. (*Id*. ¶ 60.) Plaintiff accepted that job in January 2014, and she started working on February 17, 2014. (*Id*.)

Based on these events, plaintiff filed a complaint in this court on November 27, 2013. (DE # 1.) On July 28, 2014, she filed an amended complaint asserting four claims against Deere: (1) Discrimination Based on Race and Gender under Title VII and 42 U.S.C. § 1981; (2) Retaliation under Title VII; (3) Hostile Work Environment; and (4) Retaliation under the Family and Medical Leave Act ("FMLA"). (*See* DE # 17 at 6–8.)

Discovery for this case ended on September 27, 2015. (DE # 30.) On March 19, 2018, Deere moved for summary judgment on all claims. (DE # 71.) Plaintiff filed a response to the motion on April 18, 2018 (DE # 74), and Deere filed its reply on May 9, 2018 (DE # 78). Seven days after the reply, plaintiff filed a motion seeking additional discovery pertaining to "new facts" it says were introduced in a supplement to Deere's reply brief. (DE # 81 at 2.) Plaintiff also requests leave to file a sur-reply in opposition to the motion for summary judgment. (*Id*. at 1.) Deere opposed plaintiff's motion (DE # 87), and plaintiff filed a reply brief in support of her motion (DE # 92). These pending motions are now fully briefed—aside from the possibility of an additional sur-reply— and ripe for ruling.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322

4

(1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (internal citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met. *Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir. 2010). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson,* 477 U.S. at 248; *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d 966 (7th Cir. 1998).

### III. DISCUSSION

The court will now address the pending motions. The court will first address the motion for leave (DE # 81) as it requests, in part, that the court defer ruling on the

5

motion for summary judgment.

    A.    *Motion for Leave to File Sur-Reply and Take Additional Discovery (DE # 81)*

On May 9, 2018, Deere filed a reply brief in support of its motion for summary judgment (DE # 78), along with an appendix (DE # 79) which contains a listing of additional material facts that are allegedly not in dispute. Plaintiff contests Deere's characterization of some of these facts and describes them as "new facts." (DE # 81 at 2.)

According to plaintiff, some of these new facts relate to Kristin Campbell ("Campbell"), a woman who was allegedly offered plaintiff's old Supply Manager IV position, but did not accept. (*Id*.) Plaintiff also says that there are new facts relating to corporate policies and documents not produced in discovery, including a "Merit Matrix" related to merit increases to pay. (*Id*.) Plaintiff says these new facts are supported by new affidavits from Morgan, Campbell, and Carey Brewer ("Brewer") a person involved in the process of merit increases to pay. (*Id*.)

In the pending motion, plaintiff asks the court to grant her leave to take additional discovery regarding (1) Campbell's job offer and (2) the Merit Matrix. According to Rule 56(d) of the Federal Rules of Civil Procedure, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Plaintiff's request is appropriate under Rule 56(d), since she argues that the additional discovery is necessary for her to defend her claims against the motion for summary judgment.

6

Deere opposes the motion for leave on several grounds. (*See* DE # 87.) First, Deere says that the motion is not supported by an affidavit or declaration, as required by the Rule. (*Id*. at 2.) While this was true when Deere filed its response, plaintiff has since filed a declaration in support of her motion. (DE # 92.)

Deere also cites cases which state that Rule 56(d) motions must be supported by *affidavits* and not merely declarations. (*See* DE # 87 at 2 (quoting MetLife Investors USA Ins. Co. v. Estate of Lindsey, NO. 2:16-CV-00097, 2017 U.S. Dist. LEXIS 198521 at *8 (N.D. Ind. Dec. 4, 2017)).) However, the quote used by Deere originates from the case *Deere & Co. v. Ohio Gear*, 462 F.3d 701 (7th Cir. 2006) in which the Seventh Circuit discussed the proper procedure for a Rule 56(f) motion. *Id*. at 706. Rule 56(f), as cited in that case, has since been replaced by Rule 56(d). Unlike the current rule, Rule 56(f) did require affidavits, specifically. *See Colby v. J.C. Penney Co.*, 926 F.2d 645, 648 (7th Cir. 1991). Therefore, the cases cited by Deere are irrelevant and the motion cannot be denied on this basis.

Second, Deere argues that plaintiff failed to describe the discovery she seeks with the required particularity. (DE # 87 at 3.) "A party may not use Rule 56(d) to gain a continuance where [s]he has made only vague assertions that further discovery would develop genuine issues of material fact." *MetLife Investors USA Insurance Co. v. Estate of Lindsey*, NO. 2:16-CV- 00097, 2017 WL 5989719, at * 3 (N.D. Ind. Dec. 4, 2017) (internal punctuation omitted). Regardless, in the case at hand, plaintiff has not failed to state her discovery goals with particularity. She specifically lists which facts need exploring through discovery in her declaration. (DE # 92 at 6.) The declaration also clarifies that

7

she would like to depose Brewer and Campbell. (*Id*. at 12–13.) Therefore, the motion cannot be denied for a lack of particularity.

Third, Deere argues that discovery is unwarranted because plaintiff could have discovered this information earlier if she had been diligent. (DE # 87 at 5.) "When a party is requesting discovery pursuant to Rule 56(d), that party must . . . show that additional facts would be necessary to avoid summary judgment and that *they had been diligent in pursuing discovery*." Citizens for Appropriate Rural Rds. V. Foxx, 815 F.3d 1068, 1082 (7th Cir. 2016) (internal citations omitted, emphasis added). However, plaintiff states in her declaration that she previously asked Morgan and Nancy Orlich for Campbell's name, but neither could remember. (DE # 92 at 5.) She also states that when she asked why her raise was reduced, she was given reasons other than the Merit Matrix. (*Id.*) Moreover, plaintiff acted diligently in filing this motion. Plaintiff filed the motion for leave only seven days after Deere's reply brief was filed. That means, as soon as plaintiff learned of Campbell's identity and of the existence of the Merit Matrix, she filed a motion seeking additional discovery on those items. Therefore, the motion cannot be denied on this basis.

Lastly, Deere argues that any new discovery would be either unnecessary or duplicative of prior discovery in this case. The court disagrees. In light of *Ortiz v. Werner Enterprises, Inc.* 834 F.3d 760, 765 (7th Cir. 2016), the legal standard for Title VII discrimination cases is "simply whether the evidence would permit a reasonable factfinder to conclude that plaintiff's . . . sex . . . caused the discharge or other adverse employment action." Furthermore, the "[e]vidence must be considered as a whole." *Id*.

In order for this court to ensure that the factfinder is able to assess all the relevant evidence as a whole, the court will allow for additional discovery addressing these specific issues: (1) Campbell's job offer and (2) the Merit Matrix.[2] Accordingly, the court will grant plaintiff leave to take additional discovery and extend the discovery deadline.

In addition to requesting discovery, plaintiff also asks the court for leave to file a sur-reply to address the "new facts" presented by Deere. The Local Rules of the Northern District of Indiana make no provision for the filing of sur-reply briefs. *See* N.D. Ind. R. 7 .1(a). However, "that is not an absolute bar to their use." *Merrill Lynch Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 2009 WL 3762974, at *1 (N.D. Ind. Nov.9, 2009). The determination of whether to permit a party to file a supplemental brief, such as a sur-reply, rests with the district court. *See Weibrecht v. S. Ill. Transfer, Inc.*, 241 F.3d 875, 881 (7th Cir. 2001). "Nevertheless, a party in this district may not file a supplemental brief as a matter of right—a party must first obtain leave of the court and make a showing of some factor justifying such a filing." *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, No. 308-CV-00490, 2010 WL 3119487, at *5 (N.D. Ind. Aug. 5, 2010).

Here, the court finds that the additional discovery to be performed by plaintiff justifies a deviation from the normal rule. Accordingly, the court will grant plaintiff leave to file a sur-reply to the motion for summary judgment.

---

[2] The Merit Matrix discovery that plaintiff seeks could serve as evidence of an adverse employment action. The evidence sought regarding Campbell could impact the court's determination regarding whether plaintiff's sex caused any of the alleged adverse employment actions.

9

Because the court will grant additional time for discovery, it will also grant plaintiff's request to defer ruling on the motion for summary judgment, as is allowed under Rule 56(d). However, the court will only defer its ruling to the extent that the outstanding discovery is "essential" for plaintiff to "justify its opposition" to the motion for summary judgment. *See* Fed. R. Civ. P. 56(d).

The court will examine each count of the amended complaint to determine if the outstanding discovery is essential for plaintiff to support that claim at the summary judgment stage. Count I of plaintiff's amended complaint is a claim for discrimination on the basis of sex under Title VII. In discussing this claim in her response to the motion for summary judgment, plaintiff lists potential adverse employment actions that were "the result of intentional discrimination against women." (DE # 74 at 21.) One of these proposed adverse employment actions was the alleged reduction in plaintiff's pay that Deere now says resulted from use of the Merit Matrix. (*See id.* at 10, 20.) Therefore, the upcoming discovery on the Merit Matrix is potentially essential for plaintiff to justify her position. Plaintiff also raises the same adverse employment action in her argument relating to her hostile work environment claim (Count III). (*Id.* at 10.) Therefore, the court will defer ruling on Counts I and III.

Plaintiff's defense of Count II—her retaliation claim for filing a discrimination complaint—does not involve the same pay-reduction adverse employment action. Instead she bases that claim on two other potential adverse employment actions: (1) a constructive discharge, and (2) a constellation of actions which resulted in humiliation and stunted career development. (*Id.* at 23.) Both of these theories of liability are based

10

on a broader analysis of plaintiff's workplace conditions. Therefore, the outstanding discovery could potentially be used by plaintiff to support these theories and the court will defer ruling on this claim.

Lastly, Count IV of the amended complaint is plaintiff's FMLA retaliation claim. In plaintiff's response to the motion for summary judgment she clarifies that this claim is solely based on a theory that her "use of FMLA leave was the reason for Deere's decision to stop looking for available jobs for her" at Deere. (*Id*. at 24–25.) This theory of liability has no relation to any of the facts at issue in the outstanding discovery. Neither the details of plaintiff's pay reduction, nor any details regarding plaintiff's potential replacement, are essential to justify plaintiff's opposition to summary judgment on this claim. Therefore the court will not defer ruling on Count IV.

B. *Motion for Summary Judgment (DE # 71): FMLA Retaliation Claim*

Plaintiff claims that she suffered an adverse employment action because she took FMLA leave. As plaintiff says in her response, "[a] plaintiff establishes a claim of FMLA [retaliation] by showing that she [(1)] engaged in a protective activity; (2) her employer took adverse employment action against her; and (3) there is a causal connection between her taking FMLA leave and her employer[']s adverse employment action." (DE # 74 at 24) (citing *King v. Preferred Tech. Grp.*, 166 F.3d 887, 894 (7th Cir. 1999)).)

Plaintiff asserts that the relevant adverse employment action for this claim is "Deere's decision to stop looking for available jobs for her" at the company. (DE # 74 at 25.) It is true that this decision was *caused* by plaintiff taking FMLA leave. In fact, this causal connection is readily admitted by Deere. According to one Deere employee,

11

"[w]hen [plaintiff] went out on medical leave [Deere's human resources] put a pause on . . . actively pursuing other opportunities until [they] knew when she would be returning." (DE # 75-7 at 13.)

However, despite this causal connection, plaintiff cannot establish her claim unless she can demonstrate that Deere's decision to stop looking for jobs for her was an adverse employment action. In fact, on its face, Deere's decision to stop looking seems positive for plaintiff, in that they chose to wait to perform a job search until they had more knowledge of when and to what extent plaintiff would be available to work.

According to the First Circuit, a denial of a transfer can serve as an adverse employment action for the purposes of a discrimination claim. *Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir. 1997) ("Assuming an improper motive, it is hard to see why denial of a hardship transfer in this case could not be discrimination under Title VII."). However, plaintiff has cited no authority that merely pausing a search for a new position can amount to an adverse employment action. In this court's view, a denial of a transfer is substantially different from a pause in a job search, since a pause does not necessarily result in a denial of the employee's opportunity to transfer.

Accordingly, for this claim to advance, plaintiff must provide some evidence that Deere's decision to stop the job search was in fact a denial of a transfer, and not a mere pausing of the search. Yet, plaintiff fails to provide any such evidence. Plaintiff points to statements made by Bell, in 2013, that there were no available positions for her at Deere (DE # 75-10 ¶ 54) and that "there was not a position" available in November of 2013 (DE # 75-3 at 80–81). However those statements were made regarding the availability of

positions while plaintiff was still on leave and had not yet been cleared to return to work. By the time plaintiff was cleared to return to work, she was already in the process of interviewing at other companies. She then left Deere for another company on February 14, 2014, and there is no evidence in the record that she ever told Deere before that time that she was medically cleared and ready to return to work at Deere. (*See* DE # 75-3 at 79–81.) Instead the evidence demonstrates that plaintiff merely assumed no position was available because none had been available earlier in 2013. (*See id.*)

Additionally, any evidence that Morgan dissuaded plaintiff from transferring to the Construction and Forestry division (*see* DE # 75-10 ¶ 19) or otherwise dissuaded plaintiff from transferring is not relevant because those events occurred before plaintiff took FMLA leave.

In sum, plaintiff has failed to provide any evidence that she was prevented from transferring to a new position at Deere, and she has provided no caselaw to demonstrate that a mere pause in a job search could qualify as an adverse employment action for a discrimination claim. Accordingly plaintiff has failed to demonstrate an essential element of the claim: that an adverse employment action was taken by Deere against plaintiff.[3] Therefore, plaintiff has failed to prove her FMLA retaliation claim and summary judgment is appropriate on Count IV.

---

[3] The court withholds ruling on whether Deere took any other adverse employment actions against plaintiff. In this opinion, the court will only rule as to the adverse employment action proposed by plaintiff as the basis for her FMLA retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the court

(1) **GRANTS** the motion for leave (DE # 81) with relief other than requested;

(2) **GRANTS** plaintiff leave to take additional discovery pursuant to this order and **ORDERS** that the discovery deadline for this purpose be extended to May 31, 2019;

(3) **GRANTS** plaintiff leave to file a sur-reply to the summary judgment motion (DE # 71) by June 14, 2019;

(4) **GRANTS in part** Deere's motion for summary judgment (DE # 71) as to plaintiff's FMLA Retaliation claim;

(5) Otherwise **DEFERS** ruling on the motion for summary judgment (DE # 71) pursuant to Rule 56(d) of the Federal Rules of Civil Procedure;

(6) **ORDERS** the Clerk to terminate the pending motion at DE # 71 for statistical purposes and **ORDERS** that the motion will be reclassified as a pending motion following the expiration of the discovery period.

                                        **SO ORDERED.**

Date: March 29, 2019

                                        <u>s/James T. Moody</u>
                                        JUDGE JAMES T. MOODY
                                        UNITED STATES DISTRICT COURT